UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MARCOS URENA and NELSON SANG,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**HOME DEPOT U.S.A., INC., and BRIAN JOHNSON,**<br><br>    Defendants. | Civil Action No. 05-10242 MEL |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs Marcos Urena ("Mr. Urena") and Nelson Sang ("Mr. Sang") (herein collectively as "Plaintiffs") bring this action against Defendants Home Depot U.S.A., Inc. ("Home Depot") and Department Supervisor Brian Johnson ("Mr. Johnson") (hereinafter collectively as "Defendants"), claiming that their termination from employment constituted discrimination based on national origin in violation of M.G.L. c. 151B. Mr. Urena brings an additional claim alleging Home Depot violated Mr. Urena's rights under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA claim"). As set forth below, Plaintiffs' discrimination claims cannot survive summary judgment because a single stray remark by a non-decisionmaker is insufficient evidence to support a claim of discrimination. Mr. Urena's FMLA claim also cannot survive summary judgment because Plaintiff did not properly comply with the statute's notice obligations and therefore is not entitled to protection under the FMLA. Accordingly, Defendants request

that this court grant this Motion for Summary Judgment and dismiss Plaintiffs' Amended Complaint.

## **FACTS**[1]

Mr. Sang was employed at the Tewksbury Home Depot from July 21, 2001 to January 15, 2003 as a Freight Team Associate. (Statement of Material Facts ("SMF") ¶1) Mr. Urena was hired on June 21, 2001 and worked as a freight team associate on the nightshift. (SMF ¶2)

Mr. Sang and Mr. Urena, like all of the associates, received performance reviews. (SMF ¶ 5) Before filling out the written evaluations, the management team had a "roundtable" meeting in which they discussed the performance of each of the associates. (SMF ¶ 5)  The management team consisted of the store manager, operations manager, assistant store managers and human resource manager. (SMF ¶ 5) The assistant managers conferred with the department supervisors prior to the meeting and brought the information to the round table. (SMF ¶ 5) The management team reviewed each associate's performance and made a collective decision about the overall rating of each associate.  (SMF ¶ 6) The managers or department supervisors would then complete the written evaluations for each of their associates based on the feedback and rating determined at the management roundtable meeting. (SMF ¶ 6)

Mr. Sang received poor performance ratings due to his poor attendance and punctuality. (SMF ¶ 6) These problems were first reflected in Mr. Sang's June 20, 2002 review.  (SMF ¶ 8) The evaluation cautioned Mr. Sang regarding his punctuality and attendance stating, "need to work on attendance issues" and his punctuality and

---

[1] Defendants submit herewith a Concise Statement of Material Facts, with supporting record citations. These facts are accepted as true for the purposes of this current motion only.

attendance were rated a "D" (needs improvement). (SMF ¶ 8) On November 18, 2002, Mr. Sang received a written warning drafted by Donald Kitchens, Freight Team Department Supervisor, documenting his poor punctuality and attendance. (SMF ¶ 9) The warning states, "Nelson needs to be here and ready to work at his appointed time…any further problems in this matter can result in a termination." (SMF ¶ 9)

In January of 2003, Mr. Sang received a "D" rating on his performance evaluation. (SMF ¶ 10) The review was drafted by his Department Supervisor, Eric LeCam, and reflected poor performance in a majority of categories including: "Communicated Effectively," "Promotes Teamwork," "Demonstrates Inclusion," "Self Development," "Punctuality/Dependability" and "Enthusiasm."(SMF ¶ 10) Mr. LeCam also stated on the evaluation that Mr. Sang, "needs to work on attendance and punctuality, needs to show more enthusiasm for his work, needs to cross train in more areas in the store, needs to show more self initiative and effective use of equipment." (SMF ¶ 10) Mr. LeCam was very familiar with Mr. Sang's work performance because he had worked with the Plaintiffs as a fellow Freight Team Associate before he was promoted to the Freight Team Supervisor. (SMF ¶ 10)

Mr. Urena also received a poor performance rating by the management team in his January 2003 performance review. (SMF ¶ 11) Mr. Urena received a "D" rating in the following areas: "Customer Driven," "Communicates Effectively," "Promotes Teamwork," "Demonstrates Inclusion," "Self Development,"Punctuality/Dependability," and "Enthusiasm." (SMF ¶ 11)   The review also indicates his development needs includes poor productivity, lack of initiative, inability to adapt to new areas of responsibility, and attendance problems. (SMF ¶ 11) His low productivity and lack of

initiative also resulted in repeated informal counseling notices. (SMF ¶ 13)

Mr. Urena's attendance rating was due to a number of unexplained absences. (SMF ¶ 12) In many instances, Mr. Urena told his supervisors that he was out due to a cold, his car would not start or that he didn't have a ride. (SMF ¶ 12) Mr. Urena also would often call out after he was asked to work in a different department. (SMF ¶ 14)

Mr. Urena was out on medical leave from July 2002 through August 13, 2002 for knee surgery. When Mr. Urena returned from leave he provided his supervisor with a medical note indicating that he was cleared to return to work full time without restrictions. (SMF ¶ 15) Mr. Urena never asked for any additional days off for his knee injury, nor did he provide any medical documentation indicating that he needed to take additional time off for his knee injury. (SMF ¶ 15-17)

In January 2003, Former Store Manager, Paul Nowlan, was directed that the Tewksbury store needed to reduce labor hours in the store. He was instructed to commence a pre-RIF process (to terminate those with performance deficiencies prior to make other employee reductions), using an associate's receipt of a "D" rating on a 2002-2003 performance review as the applicable criterion for termination. (SMF ¶ 18) Both Mr. Sang and Mr. Urena had received "D" ratings on their January 2003 performance reviews, and as a result, both were terminated by Mr. Nowlan for poor performance on January 15, 2003 during the pre-RIF process. (SMF ¶ 19) Five other employees (all white, non-hispanic) were also terminated in the pre-RIF process as a result of their "D" rating. (SMF ¶ 19)

Over a year after their terminations, Mr. Sang and Mr. Urena allege that they were terminated because of their national origin based on alleged conduct by Receiving

4

Department Supervisor Brian Johnson. (SMF ¶ 20) However, Mr. Johnson never engaged in any discriminatory conduct and never had any role in Home Depot's decision to terminate Mr. Sang or Mr. Urena. (SMF ¶ 20)

## STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Inverness Medical Switzerland GmbH v. Acon Laboratories, Inc., 323 F.Supp.2d 227, 234 (D. Mass. 2004) citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995) (quoting Fed.R.Civ.P. 56(c)). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." Id. (citing Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990)). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial. Id.

## ARGUMENT

**I.     Plaintiffs Have Failed To Establish Any Genuine Issue of Material Fact To Support That Their National Origin Played Any Role In Their Termination And Therefore Judgment As A Matter of Law Should Be Entered For Home Depot**

The Plaintiffs bear the ultimate burden of proving that the adverse employment action was taken because of their national origin. Guillermety Mendez v. Puerto Rican Cement Co., Inc., 56 F.Supp.2d 176, 180 (D. P.R., 1999). In analyzing discrimination

5

claims based upon circumstantial evidence, courts use the burden-shifting framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130 (1976) (adopting the same burden-shifting framework for claims under M.G.L. c. 151B). The standards of liability and proof for discrimination claims arising under federal law and M.G.L. c. 151B have generally been held to be the same. Cosme v. The Salvation Army, 284 F.Supp.2d 229, 235-236 (D. Mass 2003).

Under this three-part inquiry, the Plaintiff has the burden of establishing a *prima facie* case, after which the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action taken. Cosme, 284 F.Supp.2d at 235-236. Once the defendant has articulated a legitimate, non-discriminatory reason for the challenged action, the burden of proof shifts back to the Plaintiff employee to establish sufficient evidence that the reason proffered by the employer is false, and is a pretext for discrimination. Id. Because Plaintiff has not and cannot demonstrate sufficient evidence to meet his burdens, this Court should grant summary judgment for Defendants.

### a. Plaintiff Has Failed to Establish A Prima Facie Case of National Origin Discrimination

To establish a *prima facie* case of national origin discrimination, the Plaintiffs must show by a preponderance of the evidence that (1) they are a member of a protected class, (2) they were qualified for the job and performed the job at an acceptable level, (3) they suffered an adverse employment action, and (4) that the position remained open or was filled by a person with similar qualifications. See Kosereis v. Rhode Island, 331 F.3d

6

207, 212-13 (1st Cir. 2003), <u>Sullivan v. Liberty Mut. Ins. Co.</u>, 444 Mass 34, 41 (2005). In the present case, Plaintiffs cannot satisfy the second element of the *prima facie* case, that they met Home Depot's job performance expectations. Accordingly, they fail to meet this initial burden of establishing a *prima facie* case of national origin discrimination.

   The undisputed material facts demonstrate that Plaintiffs received unsatisfactory performance ratings on their evaluations. (SMF ¶ 8-11)  In his June 2002 evaluation, Mr. Sang received a "D" (needs improvement) rating in the categories of attendance and punctuality. (SMF ¶ 8)  In November 2002, he also received a written warning for poor attendance and punctuality. (SMF ¶ 9)  Finally, in January 2003, Mr. Sang received an overall "D" performance rating on his evaluation and was rated "D" in a majority of the categories including, "Communicated Effectively," "Promotes Teamwork," "Demonstrates Inclusion," "Self Development," "Punctuality/Dependability," and "Enthusiasm."  (SMF ¶ 10)  Mr. Sang's performance review also indicated that he "needs to work on attendance and punctuality, needs to show more enthusiasm in his work, needs to cross-train in more areas in the store, need to show more self initiative and effective use of equipment. (SMF ¶ 10)  Similarly, Mr. Urena also received a "D" rating in his January 2003 performance evaluation in the following categories, "Communicates Effectively," "Customer Driven," "Promotes Teamwork", "Demonstrated Inclusion," "Self Development," "Punctuality/Dependability," and "Enthusiasm."(SMF ¶ 11)  His January 2003 performance evaluation also indicated that his key developmental needs were poor productivity, lack of initiative, inability to adapt to new areas of responsibility, and attendance problems.  (SMF ¶ 11)

As reflected in their performance reviews, both Plaintiffs had difficulty working with the freight team. On occasions when the plaintiffs were asked to work in different departments, as required as a freight team member, they would get angry and would basically stop productivity altogether. (SMF ¶ 14) As all of the undisputed material facts support that Plaintiffs did not meet the required job expectations due to their poor performance, they cannot satisfy their burden of establishing that they met Home Depot's legitimate job performance expectations and thus fail to satisfy the second requirement of a *prima facie* case. See Nater v. Riley, 114 F. Supp. 2d. 17, 28 (D. P.R. 2000)

### b. Home Depot Has Articulated A Legitimate, Nondiscriminatory Reason for Plaintiff's Termination

Even if the Plaintiffs could establish a *prima facie* case of national origin discrimination, which they cannot, Home Depot need only "articulate a legitimate nondiscriminatory reason for the employee's termination" in order to rebut the presumption of discrimination. Quinones v. Houser Buick, 2005 WL 1668195 *2 (D. Mass 2005)(citing Thomas v. Eastman Kodak, 183 F.3d 38, 56 (1st Cir. 1999)). The burden on the defendant is only one of production; the burden of proof always remains with the Plaintiff. See Lipchitz v. Raytheon, 434 Mass 493 (2001); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the Plaintiff remains at all times with the Plaintiff."). The defendant is not required to present evidence that it made a fair and correct employment decision. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997). The only pertinent inquiry is whether the decision was discriminatory. Id.

Home Depot has articulated a legitimate, nondiscriminatory business reason for

8

Plaintiffs termination, i.e. Plaintiffs unsatisfactory performance ratings having led them to be selected for a reduction-in-force process conducted at the store, along with other non-Hispanic associates who also received "D" ratings. (SMF ¶ 19) Indeed, it is nonsensical to suggest that defendants would discharge five non-hispanic employees who were also affected by the reduction-in-force in order to discriminate against plaintiffs. Having satisfied its burden of articulating a legitimate business reason for its actions against Plaintiffs, any presumption of national origin discrimination raised by the *prima facie* case vanishes and the burden of persuasion shifts back to Plaintiffs to demonstrate the stated reason was a pretext and the true reason was national origin discrimination.

    **c.    Plaintiff Has Failed To Raise Any Genuine Issues Of Material Fact On The Issue of Pretext.**

Once the defendant has articulated a legitimate reason for its action, the burden reverts to the Plaintiff, who must then demonstrate, by a preponderance of the evidence, that the defendant's articulated reason is pretext for discrimination. Knight v. Avon Products, Inc., 438 Mass. 413, 420 (2003). It is not sufficient for a Plaintiff to present "minimally sufficient evidence of pretext;" rather, Plaintiff must present evidence that overall reasonably supports a finding of discriminatory animus. Thomas v. Eastman Kodak, 183 F.3d at 62. "The Plaintiff cannot avoid summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." Panias v. Lynn Public Schools, 2003 WL 1955165, at *5 (D.Mass. 2003).

Plaintiff has failed to produce any evidence to allow a reasonable fact finder to conclude that Defendant's proffered reason for Plaintiffs' termination was a sham or that

9

its real motivation for terminating his employment was discriminatory.

Plaintiffs' evidence of discriminatory animus is based on an alleged single remark by Mr. Johnson, the Receiving Department Supervisor, not Plaintiff's supervisor. The Plaintiffs claim he called them a "fucking spic" while moving by on a forklift a few months before they were discharged. Although Home Depot and Mr. Johnson vehemently deny having made this statement, it still remains otherwise inadequate to support the current claims both (1) because the single remark itself is insufficient to support a claim of national origin discrimination and (2) was allegedly made by a non-decision maker concerning their termination from employment.

It is well settled that a single stray remark is insufficient to prove discriminatory intent for a discharge when it is unrelated to the actual decision to discharge. Finney v. Madico, Inc., 42 Mass. App. Ct. 46, 51 (1997) (an isolated, ambiguous, or stray remark is insufficient, standing alone, to prove discriminatory employment action); Straugh v. Delta Air Lines, 250 F.3d 23, 36 (1st Cir. 2001); Anderson v. Home Depot, 2004 WL 42569 *5 (D. Mass. 2004), McMillian v. Mass. Soc. For Prevention of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998) (probativeness of remarks for pretext inquiry is circumscribed if they were made in a situation temporally remote from the date of the employment decision or if they were not related to the employment decision in question or were made by non-decisionmakers).

Even if Mr. Johnson did make this comment to the Plaintiffs, which defendants deny, it is insufficient to satisfy Plaintiffs' burden of proving pretext because Mr. Johnson was not a decision maker with respect to Plaintiffs' termination and his one remark was temporally remote and not related to the decision to discharge. See Brunner

v. Stone & Webster Engineering Corp., 413 Mass. 698, 704 (1992) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir.1990) ("The biases of one who neither makes nor influences the challenged personnel decisions are not probative in an employment discrimination case").   Home Depot has presented undisputed evidence that Mr. Johnson was not a decision maker in Plaintiffs' "D" performance rating. (SMF ¶ 3, 7, 20) The evidence indisputably shows that the Store Manager, Paul Nowlan was directed to terminate any associate that received a "D" rating. (SMF ¶ 19, 20)Mr. Nowlan met with each of the Plaintiffs and informed him of his termination. (SMF ¶ 19)  Mr. Johnson had no involvement in the decision to terminate Plaintiffs. (SMF ¶ 20) Furthermore, Mr. Johnson had no input in Plaintiffs' poor performance ratings on their evaluations which ultimately led to their termination. (SMF ¶ 7)  In addition, prior to drafting the evaluations, the management team attended a roundtable meeting and discussed the performance of all of the associates. (SMF ¶ 5) The assistant managers provided the input for their associates and the group then collectively decided the overall rating for both Plaintiffs. (SMF ¶ 5-7)  Both Plaintiffs had been counseled on performance issues in the past by Mr. Kitchens and Mr. LeCam. (SMF ¶ 13)  Mr. Johnson was not on the management team and likewise provided no input in that forum for Plaintiffs' January 2003 evaluations.  (SMF ¶ 7, 11)

    Moreover, neither of the Plaintiffs were ever evaluated or supervised by Mr. Johnson.  (SMF ¶ 7-10) During Plaintiffs' employment at Home Depot, they worked in the Freight Department and were supervised by the Freight Department supervisors, Michael Condo, Daniel Kitchens, and Eric LeCam. (SMF ¶ 3) Mr. Johnson was the Receiving Department Supervisor during Plaintiffs' employment at Home Depot and at

11

no time was responsible for supervising or evaluating the Plaintiffs while they worked in the Freight Department.[2] (SMF ¶ 3)  Plaintiffs' January 2003 performance evaluations were drafted at the direction of Eric LeCam, their supervisor at that time.  (SMF ¶ 10)  Because Mr. Johnson had more experience with writing performance reviews, he assisted Mr. LeCam in drafting Mr. Urena's review because it was Mr. LeCam's first time writing a review.  (SMF ¶ 11)  The roundtable feedback formed the basis for the overall review; Mr. Johnson merely assisted Mr. LeCam with the drafting process.  (SMF ¶ 6, 11)  Mr. Johnson did not provide *any* input as to the substance of the Mr. Urena's evaluation.  (Id.)  Mr. LeCam drafted Mr. Sang's evaluation himself without Mr. Johnson's assistance. (Id.)

Moreover, the stray comment allegedly made by Mr. Johnson a few months before the plaintiffs discharge is temporally remote from the Plaintiffs' termination and could not have influenced the employment decision because no decision maker was ever made aware of the comment.  The Plaintiffs' allege that the derogatory remark was made on only one occasion, a couple of months before their termination. (SMF ¶ 20)  The comment was allegedly made to Mr. Urena while Mr. Johnson was riding a forklift and passing by the Plaintiffs in the paint department. (SMF ¶ 20) Mr. Sang admits that Mr. Johnson did not make any comments directly to him about his national origin. (SMF ¶ 20) Plaintiffs' claim of discrimination rests on one remark and is insufficient standing alone to prove discriminatory employment action.  In sum, even if Mr. Johnson did make the one remark, this remark did not have any influence on Plaintiffs' termination or

---

[2] Plaintiffs allege that after Greg Morris, Night Assistant Manager, left Home Depot, Mr. Johnson was given more supervisory authority of the plaintiffs. (Urena Dep. at 76-77; Sang Dep. at 84) Although it is true that there was a short period of time when there was not an assistant manager covering the night shift, the night shift supervisors, including Mr. Johnson, were never acting with no management oversight. (Nowlan Dep. at 37)  Indeed, it is undisputed that the Store Manager did not give  Mr. Johnson any additional responsibilities and his supervisory role did not change or expand to include the plaintiffs during this brief period of time.  (Nowlan Dep. at 38)

performance evaluation because it was never stated by or communicated to a decision maker and, standing alone, is insufficient evidence of discriminatory animus.

Plaintiffs' allegation that Mr. Johnson harassed the Plaintiffs by treating them more harshly also lacks evidence of discriminatory animus. In support of their claim, Plaintiffs allege that Mr. Johnson would send them to work in a different department beside the paint department, which resulted in their poor performance reviews. Indeed, many of the supervisors including Mr. Kitchens and Mr. LeCam sent Mr. Sang and Mr. Urena to work in different departments when needed. (SMF ¶ 14) All of the employees on the freight team were moved to different departments as needed. (SMF ¶14). See Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002) (the clear trend of authority is to hold that a purely lateral transfer cannot rise to the level of a materially adverse employment action). Here, Plaintiffs allegation fails to rise to the level of a lateral transfer. Rather, the Plaintiff were merely asked pursuant to their job duties to assist in any department that needed assistance. According to Mr. Kitchens, when he asked the Plaintiffs to work in different departments they would take longer than normal to finish in the paint department so that by the time they finished with the paint, there wasn't enough time for them to work in the other department. (SMF ¶ 14) Mr. LeCam also found that when he asked the Plaintiffs to work in different departments they would get angry and would basically stop productivity altogether. (SMF ¶ 14) Mr. LeCam indicated this problem and the Plaintiffs' poor performance in their January 2003 performance reviews. (SMF ¶ 13-14) Nothing in the record ultimately indicates that any interaction between Plaintiffs and Mr. Johnson played a role in the evaluations they received. For the foregoing reasons, the Court should grant summary judgment as to

Plaintiffs claim of national origin discrimination in violation of M.G.L. ch. 151B.

### II. Plaintiff, Mr. Urena, Failed To Establish That He Was Eligible For Protection Under The FMLA

Mr. Urena claims Home Depot violated his rights under the FMLA by terminating him based on absences related to his knee injury which should have been covered by the FMLA. The FMLA affords eligible employees certain substantive rights, and it is "unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under FMLA." 29 U.S.C. § 2615(a)(1). However, these substantive rights do not include "an entitlement to any right, benefit or condition to which the employee would not have been entitled if the leave had not been taken." Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1018 (7th Cir. 2000).

Home Depot terminated Mr. Urena due to his overall "D" rating, not because of use of a protected absence. See Baily v. Amsted Industries, 172 F.3d 1041, 1046(8th Cir. 1999) (Plaintiff cannot claim protection from the FMLA for disciplinary action by the employer not attributable to his serious health condition). Mr. Urena's overall "D" (needs improvement) rating was a result of his overall poor performance in a number of areas including, "Customer Driven," Communicates Effectively," Promotes Teamwork," "Demonstrates Inclusion," Self Development," Punctuality/Dependability," and "Enthusiasm." (SMF ¶ 11) Indeed, Mr. Urena's poor attendance contributed to his poor performance rating. (SMF ¶ 11) However, his attendance problems were not solely related to his knee injury and his over all "D" rating was based on performance issues besides attendance. (SMF ¶ 11-12) Therefore, Plaintiff's contentions about his knee-related absences are irrelevant to his termination and fail to create a genuine issue of

14

material fact.

Even if Plaintiff's termination was based on absences related to his knee injury, which defendant denies, the Plaintiff is not entitled to protection under the FMLA because he did not properly comply with the FMLA notice obligations by informing Home Depot that he required intermittent leave after he returned to work with no restrictions.   See Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 724 (6th Cir. 2003) (summary judgment is appropriate since the Plaintiff failed to give his employer enough information for the employer to reasonably conclude that an event described in FMLA has occurred).

To state a valid claim under the FMLA, Plaintiff must plead facts showing that (1) he is an "eligible" employee under the FMLA; (2) Home Depot is an eligible employer under the FMLA; (3) Plaintiff was entitled to leave under the FMLA; and (4) he gave adequate notice to Home Depot of his intention to take leave.  Wheeler v. Pioneer Development Services, 349 F. Supp. 2d 158, 164 (D. Mass 2004).

The defendant does not contest that Plaintiff is an eligible employee under the FMLA or that Home Depot is an eligible employer under the FMLA.  Moreover, the defendant does not dispute for the purposes of this motion that Plaintiff's knee surgery occasioned protected leave from July – August 2002.  The issue here concerns the adequacy of Plaintiff's notice to Home Depot of his need for intermittent FMLA leave after August 13, 2002, when he had received medical clearance to return to work full time.

Pursuant to the FMLA, where treatment or a qualifying reason for FMLA is unforeseeable, the applicable regulations indicate that an employee must notify his or her

15

employer "as soon as practicable." 29 CFR 825.303(a). In general, the employee must "give notice to the employer within no more than one or two working days" after he learns of the need for leave. 29 C.F.R. 823.303(a); see also, Collins v. NTN-Bower Corp., 272 F.3d 1006 (7th Cir. 2001) (notice is essential even for emergencies), Washington v. Fort James Operating Company, 2000 WL 1673134 *3 (D. Or. 2000) (in order for a request to be timely, it must be made as soon as possible and practical).

The employee need not specifically invoke his FMLA rights, but must give enough information to put employer on notice of the need for FMLA leave. Boisvert v. Wal-Mart Stores, Inc., 2001 WL 274756 *2 (D.N.H. 2001). "Nothing places a duty on the employer to affirmatively grant leave without such a request or notice by the employee. Rather, to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." Brohm v. JH Properties, Inc., 149 F.3d 517, 523 (6th Cir. 1998), Price v. Marathon Cheeses Corp., 119 F.3d 330, 335 (5th Cir 1997)(sufficient information must be given to the employer to provide reasonable notice that the employee requests time off for serious health condition). While an employee's statements may give rise to a duty on the part of the employer to inquire into the nature of the employee's need for leave, the employer is not required to be clairvoyant. Johnson v. Primearica, 1996 WL 34148 at *5 (S.D.N.Y. Jan. 30, 1996).

The critical question here is whether the information imparted to Home Depot was sufficient to reasonably apprise it of Mr. Urena's request to take intermitted FMLA time off after he was given full medical clearance to return to work full time. See Brohm v. JH Properties, Inc., 149 F.3d 517, 523(6th Cir. 1998). Nothing in the FMLA or governing regulations, suggests that an employer's duty to inquire may be triggered

16

solely by the employer's knowledge of prior medical events. Johnson, 1996 WL 34148 at *6; see also Baily, 172 F.3d at 1046; Slaughter v. American Building Maintenance Co. of New York, 64 F.Supp.2d 319 (S.D. N.Y.1999), Collins v. NTN-Bower Corp., 272 F.3d at 1008.  In Baily, the Plaintiff argued that the notice requirement was satisfied by the company's knowledge that he had a serious medical condition, was under medical care and needed to miss work from time to time.  Baily, 172 F.3d at 1046. The Court held that his attempt to satisfy the notice requirement by an indication that he might have to be absent for some unforeseen time in the future satisfies neither of the requirements of notice under the FMLA. Id.

In Slaughter, the Plaintiff was out of work on medical leave due to a back injury. After approximately two months, Plaintiff received medical clearance from his doctor to return to work. 64 F.Supp.2d at 321.  After Plaintiff was medically cleared to report to work, he began to have back pain again and occasionally did not report to work. Id. at 322.  Similar to Mr. Urena, Plaintiff in Slaughter failed to report to his employer or provide a medical note indicating that any of his absences were due to his back condition. Id. at 325.  The Court found that the Plaintiff's notice to his employer was insufficient because he did not provide information as to which absences were in fact back related. Id. The court held that the employer's general awareness of the Plaintiff's back troubles did not relieve the Plaintiff of the obligation to inform his employer that he was taking leave because of his back.  Id.

In Collins, the Court held that because Plaintiff's medical condition had been developing for some time and she could predict that her medical condition would cause her to miss work on occasion, she should have given her employer notice of her serious

17

medical condition and on the particular day that she was incapacitated she should have made clear the "serious" nature of her condition. 272 F.3d at 1008. A reference to being "sick" is not sufficient and does not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable. Id.

      Here, Mr. Urena claims that Home Depot knew that he continued to have soreness due to his knee injury. Mr. Urena, however, fails to show that he properly notified his supervisor of a qualifying reason for his absences. (SMF ¶ 12, 15- 17) Mr. Kitchen, Plaintiff's supervisor at the time he returned from his surgery, testified, "It was never brought to my attention that his absences during my time as his direct supervisor, that his knee was an issue of his attendances." (SMF ¶ 16-17) Rather, Mr. Urena primarily told Mr. Kitchens and Mr. LeCam that his absences happened because his car wouldn't start, he didn't have a ride or he had a cold. (SMF ¶ 12) Plaintiff's supervisor's general knowledge about his knee surgery is insufficient notice that the reason for the Plaintiff's absence might be serious or that FMLA is applicable. Plaintiff was required to make clear the serious nature of his condition on the particular day that he was to be absent. Plaintiff admits that he did not provide any doctor's notes indicating his absences were due to his knee. (SMF ¶ 18) Plaintiff incorrectly assumes that, because his employer knew that earlier he had knee surgery, his subsequent absences after he was released to work full time were protected by FMLA. During the meeting to discuss Mr. Urena's D rating on his January 2003 performance review, Mr. Urena suggested that some of his absences were related to his prior knee injury. Mr. Johnson recorded Mr. Urena's comments on Mr. Urena's performance review form. (SMF ¶ 11) Mr. Urena's comments, approximately five months after receiving medical clearance and returning

from the surgery, is temporally remote and insufficient post hoc notice to Home Depot.

Based on the record, it is unreasonable to think that the employer would assume or have reason to think that the Plaintiff's absences were FMLA-protected.  As the record indicates, Plaintiff was absent on many occasions for reasons unrelated to his knee injury that assuredly would not have been qualified for coverage under the FMLA. (SMF ¶ 12)  Moreover, the medical documentation from Plaintiff's doctor certified that Plaintiff would be able to return to work full time on August 13, 2002, and did not indicate that Plaintiff would need any intermittent leave or require any restrictions. (SMF ¶ 15)  It would neither be reasonable nor consistent with the FMLA's notice requirements to impose a burden upon Home Depot to inquire affirmatively for every absence thereafter whether Plaintiff was, in fact, seeking leave because of his knee.  Because Mr. Urena cannot support his claim that Home Depot unlawfully took into account absences protected by the FMLA, Count V of the Amended Complaint must be dismissed.

## CONCLUSION

Plaintiffs have failed to allege sufficient facts to support all of their claims of discrimination under Ch. 151B and Mr. Urena has failed to allege sufficient facts to support his claim that his absences were protected under the FMLA.   Accordingly, the Court should grant the Defendants' Motion for Summary Judgment on all counts.


Respectfully Submitted,

Home Depot U.S.A., Inc, and Brian Johnson

By their Attorney,

_/s/ Joseph P. McConnell_____
Joseph P. McConnell, Esq. BBO # 566412
MORGAN BROWN & JOY, LLP

                                                200 State Street
                                                Boston, MA 02109
                                                617-523-6666

Date:  December 15, 2005

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing document was served upon counsel for plaintiffs, James W. Donchess, Esq., 60 Main Street, Nashua, N.H.  03060, by first-class U.S. mail this 15th day of December, 2005.

                                                  _/s/ Joseph P. McConnell_____
                                                Joseph P. McConnell